## BOERTH *v.* DETROIT CITY GAS CO.

1. GAS—MUNICIPAL REGULATION—PRICE OF GAS FURNISHED—DE-
   TROIT CHARTER.

   Though no express authority to prescribe the rates at which
   gas shall be furnished to the inhabitants is given to the com-
   mon council of Detroit by the charter or the statutes, there
   is nothing in either which expressly or by proper construc-
   tion prohibits the exercise of the power, and it being highly
   expedient that it should possess that power, and the council
   being given by the charter (section 34, chap. 7, charter of
   1904), and by the statute authorizing the incorporation of
   gas companies (section 7123, 2 Comp. Laws), broad powers
   with respect to the use of the streets, including the power to
   refuse its consent except upon compliance with reasonable
   regulations, the power to prescribe the rate at which gas
   shall be furnished, as a condition of the company's occupancy
   of the streets, is impliedly granted.

2. SAME—PRINCIPLES INVOLVED.

   The power of a municipality to prescribe the rates at which
   gas shall be furnished to its inhabitants, as a condition of
   occupancy of its streets, is an incident of its power to make
   contracts for the benefit of its inhabitants, and is quite dif-
   ferent from the legislative power to regulate rates generally,
   such as the legislature exercises with respect to railroads.[1]

3. SAME—RATE AUTHORIZED—ORDINANCE—CONSTRUCTION.

   A gas ordinance providing that the gas company "shall not
   charge nor receive a higher rate than 90 cents" for gas fur-
   nished gives the company a contract right to charge the price
   named.

4. SAME—DISCRIMINATION BETWEEN CUSTOMERS—REMEDY.

   A consumer of gas for fuel purposes who is charged 80 cents
   per thousand therefor, as prescribed by the gas ordinance, is
   not injured by the practice of the gas company in supplying
   gas to users for power at 60 cents per thousand, nor does such
   discrimination entitle him to be furnished gas for fuel at the
   price charged to power users, though the price of 60 cents is
   not authorized by the gas ordinance.

---

[1]As to legislative regulation of gas rates, see note to *Winchester
& L. Turnpike Road Co.* v. *Croxton* (Ky.), 33 L. R. A. 181.

Appeal from Wayne; Brooke, J.   Submitted November 21, 1907.   (Docket No. 38.)   Decided May 26, 1908.

Bill by Henry J. Boerth against the Detroit City Gas Company to enjoin an unlawful discrimination in rates. From a decree dismissing the bill, complainant appeals. Affirmed.

*Alex. J. Groesbeck* and *Guy A. Miller*, for complainant.

*Angell, Boynton, McMillan & Bodman* (*Brennan, Donnelly & Van De Mark*, of counsel), for defendant.

Complainant keeps a restaurant in the city of Detroit. In the month of October, 1901, he used for fuel purposes in said restaurant gas supplied by defendant to the amount of 113,700 cubic feet.   Defendant presented a bill charging complainant for said gas at the rate of 80 cents per thousand cubic feet.   Complainant tendered compensation at the rate of 60 cents per thousand cubic feet.   This tender defendant refused and threatened to remove complainant's meter and discontinue his supply of gas.   Thereupon complainant instituted this suit in equity for the purpose of securing a permanent injunction restraining such removal.   He contends that the rate charged by defendant is at once unreasonable and unjust discrimination.   He was not permitted to introduce testimony tending to prove the charge unreasonable, because the trial court held that the city of Detroit had entered into a valid contract permitting defendant to make a charge of 80 cents per thousand cubic feet for the gas furnished complainant.   This contract was found in an ordinance of the city made in 1898 granting to defendant for 30 years the right to lay its gas pipes in the streets of the city, and is as follows:

"The said company [defendant] shall not charge nor receive a higher rate than 90 cents per thousand cubic feet for manufactured gas sold to consumers for fuel purposes from illuminating mains within the city limits, and each

and every consumer shall be entitled to a discount of ten cents per thousand cubic feet upon " prompt payment.

Complainant claims the rate charged to be an unjust discrimination because defendant supplied gas for power purposes to those who use gas engines in the city of Detroit at the rate of 60 cents per thousand cubic feet. This claim like the claim of unreasonableness was denied by the trial court and a decree entered dismissing complainant's bill. Complainant appeals to this court. He asserts three propositions, and if he is right respecting any of them he is entitled to relief. Those propositions are:

*First.* That the city of Detroit had no power to grant to defendant the right to charge 80 cents per thousand cubic feet for fuel gas furnished to consumers.

*Second.* That the city of Detroit never did grant the right to make that charge.

*Third.* That the making by defendant of the 60 cent rate to those who use gas for power purposes was unjust or unlawful discrimination entitling complainant to relief.

CARPENTER, J. (*after stating the facts*). Did the city of Detroit have authority to grant defendant the right to charge 80 cents per thousand cubic feet for fuel gas delivered to consumers within said city? The charter of the city of Detroit confers upon it this power:

" To control, prescribe and regulate the manner in which the highways, streets, avenues, lanes, alleys and public grounds and spaces within said city shall be used and enjoyed. * * * To provide for and regulate the lighting of said avenues, streets and public places." Detroit Charter (1904), chap. 7, § 34.

The act for the organization of gas light companies— under which act defendant is incorporated—contains the following provision (section 7123, 2 Comp. Laws):

" Any corporation formed under this act * * * shall have full power to manufacture * * * and sell * * * gas * * * and shall have power to lay conductors for conducting gas * * * through the streets, lanes, or squares of any city, town or village where said corporation is located, or carrying on its business, * * *

which pipes or conductors shall be laid with the consent
of the municipal authorities of such cities, townships or
villages through which the same are laid under such rea-
sonable regulations as they may prescribe."

There is given by this language to the city of Detroit
very broad powers. Without its consent a gas company
cannot lay its pipes in the streets, and without so laying
them it cannot furnish gas to the inhabitants of the
municipality. The city may refuse to grant that consent.
It is clear, too, that it may attach conditions to its con-
sent. What conditions? May it prescribe the rates at
which gas shall be furnished to its inhabitants? The
statute does not say in express terms that it can. Is it for-
bidden? It certainly is not forbidden in express terms.
The only language in the statute limiting the authority of
the municipality is to be found in the language authoriz-
ing the municipality to prescribe reasonable regulations
for the laying of the pipe. Without undertaking to defi-
nitely determine what is meant by reasonable regulations,
it is quite clear that nothing but unreasonable regulations
are prohibited. Authority to prescribe rates then is not
prohibited unless that authority may be properly denomi-
nated unreasonable. Is it unreasonable? There is no
doubt that the municipality may determine for what
length of time a gas company may use its streets for con-
veying gas. It had, therefore, authority—an authority
exercised in this case—to determine that the gas company
should use the streets for a period of 30 years, for the pur-
pose of supplying its inhabitants with gas. Is it unrea-
sonable for the city to prescribe the rates at which gas
shall be furnished to its inhabitants? If the city cannot
prescribe those rates, consumers of gas must pay what-
ever price the gas company asks or resort to litigation,
and pay what is there determined to be reasonable. Few
consumers will resort to litigation. Indeed, gas bills are
generally so small that it does not pay to question their
amounts. If the rates are not prescribed it may be safely

stated that nearly all consumers of gas will pay without question whatever bills are presented to them. This is illustrated by *Pingree* v. *Mutual Gas Co.*, 107 Mich. 156. There it appeared that for many years the Mutual Gas Company of Detroit had charged an excessive amount for the gas it furnished. It is a fair inference that not one of its thousands of consumers questioned these bills for years. Indeed, the plaintiff in that suit, the late Governor Pingree—a man not likely to submit to illegal extortion—himself paid these bills without protest, and the only question in the case was whether that circumstance disentitled him to recover. As a practical proposition it may be said, then, that consumers must either pay the rates fixed by the company or the rates prescribed by municipal authority—in the absence, as in this case, of any action by the legislature. It may be said, then, that in order to safeguard the rights of its inhabitants who use gas, it is not only not unreasonable that the city should have the power to fix rates, but it is highly expedient,—indeed, it is necessary,—that it should possess that power. It is therefore quite clear that there is nothing in the statute which either in express terms or by proper construction prohibits the city prescribing rates at which gas shall be furnished to its inhabitants.

In this respect the case at bar differs materially from *Freeport Water Co.* v. *City of Freeport*, 180 U. S. 587, a case relied upon by complainant. In that case it was held by a divided court that the authority of the municipality to enter into a contract which prescribed water rates was limited by express statutory enactment. There is no such limitation in this case.

It has already been stated that the statute does not give the city express authority to prescribe rates. Can that authority be implied ? Does it pass as an incident to the authority to attach conditions to its consent that pipes may be laid in the streets ? This raises the most important question in this case. Complainant contends that the power of a municipality to prescribe rates cannot rest in

implication; that a municipality has not that power unless it is expressly granted. In support of this contention are cited many cases (*Interstate Commerce Commission* v. *Railway Co.*, 167 U. S. 479, is the most important of these cases) relating to a grant of the legislative power of determining rates. The principle underlying these authorities is that there is a strong presumption against the grant of legislative authority. That principle and the authorities applying it have no application here. It is not contended that the city of Detroit has the legislative power of determining rates. That would be the power of regulating these rates according to its own wisdom from time to time precisely as the legislature regulates the rates of railroads. Complainant agrees with defendant that the city possesses no such power. The power to prescribe rates by contract—and that is the power which was exercised in this case—is a very different power from the legislative power of regulating rates.

Says the supreme court of Indiana in *City of Indianapolis* v. *Gas-Light & Coke Co.*, 66 Ind. 396:

" This power to legislate within the authority delegated to them by law is distinct from the power to contract, although exercised by the same corporation. They cannot, by contract, delegate or restrict their legislative power, nor can they, merely by their legislative power, make a contract. These two powers need not be confounded. The exercise of the legislative power requires the consent of no person except those who legislate; while it is impossible to make a contract without the consent of another, or others. We think, therefore, that, when the city of Indianapolis made the contract in question with the Gas-Light Company [a contract like that involved in this case] it made it in the exercise of its power to contract, and not in the exercise of its power to legislate, although the power to make the contract was authorized by an ordinance; and, having the power to make a contract touching the subject-matter, it had the right to make it according to its own discretion as to its prudence or good policy, within the limits of its franchise."

Says the United States circuit court of appeals, eighth

circuit, in *Illinois Trust & Savings Bank* v. *Arkansas City*, 76 Fed. 271 (34 L. R. A. 518):

"A city has two classes of powers,—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class it is governed by the rule here invoked. In their exercise it is ruling its people and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation. * * * In contracting for waterworks to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city and its denizens."

See, also, *Omaha Water Co.* v. *City of Omaha*, 147 Fed. 1; *Muncie Natural Gas Co.* v. *City of Muncie*, 160 Ind. 97 (60 L. R. A. 822); *Zanesville* v. *Gas-Light Co.*, 47 Ohio St. 1.

Complainant invokes the authority of those cases (see *Detroit Citizens' St.-Ry. Co.* v. *City of Detroit*, 110 Mich. 384 [35 L. R. A. 859], 171 U. S. 48) which hold that the power to grant exclusive rights will not be implied from general language, but must be clearly and explicitly expressed. Nothing can better show the inapplicability of these decisions than by quoting the concluding language of the opinion rendered by the Supreme Court of the United States. It reads as follows:

"Easements in the public streets for a limited time are different and have different consequences from those given in perpetuity. Those reserved from monopoly are

different and have different consequences from those fixed in monopoly. Consequently those given in perpetuity and in monopoly must have for their authority explicit permission, or, if inferred from other powers, it is not enough that the authority is convenient to them, but it must be indispensable to them."

Complainant has cited many other authorities. They have received our careful attention. None of them are in point. We can say of them, as of those discussed in this opinion, that they justify no argument helpful to complainant except upon the assumption that the power to prescribe rates cannot be used in the interest of the inhabitants of the city. We have already shown it can be used to safeguard the interest of those inhabitants. Emphasis is placed upon the proposition that the rates prescribed by the ordinance are too high. This does not afford an argument against the existence of the power to prescribe rates. In *Mahan* v. *Telephone Co.*, 132 Mich. 242, the telephone company sought to avoid certain rates for telephonic service prescribed in a contract entered into by its predecessor and the city. It is apparent that the company thought the prescribed rates were too low. It was held that these rates governed. Surely the principle is not changed because a different "ox is gored."

Concluding as we do that none of the authorities relied upon by complainant justify the proposition that the city of Detroit had not the implied authority of prescribing rates by contract, we proceed to consider opposing authorities. These authorities are so clear, authoritative, and harmonious that we shall not enter into a discussion of the principles governing the implied powers of municipalities. Though it should be borne in mind that, as already pointed out in this case, the power of a municipality to prescribe rates by which gas shall be furnished is a power necessary to safeguard the rights of its inhabitants.

The first case to receive attention is *Mahan* v. *Telephone Co.*, supra. There the city of Detroit possessing, not the authority to exclude telephone companies from the

use of its streets, but possessing only the authority to establish reasonable rules and regulations, enacted an ordinance fixing the maximum rate of telephonic charges. The telephone company accepted this ordinance. The successor of this telephone company declined to observe the terms of this ordinance. It denied the right of the city to fix rates. This contention was overruled, and it was said "the right of the city to make the contract in the premises cannot be questioned."

In *Muncie Natural Gas Co.* v. *City of Muncie*, 160 Ind. 97 (60 L. R. A. 822), it was held that the grant of an exclusive power over the streets, highways, and alleys gave to the municipality authority to enter into a contract with the gas company prescribing the rates which should be charged. The court saying:

"The grant of exclusive power to the common council over such ways comprehends the right to permit gas companies to use the streets. If the common council may permit a natural gas company to use the streets without any conditions annexed, except such as the law attaches, it is not perceived why, as in this case, in making provision for supplying natural gas to all of the inhabitants of the city, it may not protect such inhabitants against extortion by providing that the company shall not charge in excess of certain prices for its service. The right to annex terms by way of limitation upon the authority of the grantee in such cases has been often affirmed by this court."

Under a provision that a street railway shall not be constructed until the council "by ordinance shall have granted permission and prescribed the terms and conditions" it was held that the city might enter into a contract prescribing the rates of fare. *City of Cleveland* v. *Railway Co.*, 194 U. S. 517. See, also, *City of Noblesville* v. *Improvement Co.*, 157 Ind. 162; *Western Paving & Supply Co.* v. *Railroad Co.*, 128 Ind. 531 (10 L. R. A. 770); *City of Indianapolis* v. *Trust Co.*, 140 Ind. 107 (27 L. R. A. 514); *City of Zanesville* v. *Gas-Light Co.*, 47 Ohio St. 1; *City of Cleveland* v. *Railway Co.*, 201 U. S.

529; *Omaha Water Co.* v. *City of Omaha,* 147 Fed. 1; *City of Detroit* v. *Railway Co.,* 184 U. S. 368.

We conclude therefore that the city of Detroit did have authority to enter into the contract prescribing the rate which defendant should charge the inhabitants of the city of Detroit.

2. Did the city of Detroit enter into such a contract? Did it grant to defendant the right to charge 80 cents per thousand cubic feet for gas used for fuel? That depends upon the proper construction of the following language:

"The said company [defendant] shall not charge nor receive a higher rate than 90 cents per thousand cubic feet for manufactured gas sold to consumers for fuel purposes from illuminating mains within the city limits, and each and every consumer shall be entitled to a discount of ten cents per thousand cubic feet upon" prompt payment.

Complainant argues that this language is a limitation upon the right of the company to charge and not a grant. This precise question was involved in *City of Detroit* v. *Railway Co.,* 184 U. S. 368. There an ordinance provided "that the rate of fare shall not exceed five cents on any one car." The court said:

"Nor does the language of the ordinance, which provides that the rate of fare for one passenger shall not be more than five cents, give any right to the city to reduce it below the rate of five cents established by the company. It is a contract which gives the company the right to charge a rate of fare up to the sum of five cents for a single passenger, and leaves no power with the city to reduce it without the consent of the company."

See, also, *City of Cleveland* v. *Railway Co.,* supra.

A similar question was involved in *Pingree* v. *Railroad Co.,* 118 Mich. 314 (53 L. R. A. 274). There the charter of the railroad company provided that it should be lawful for said company from time to time to fix, regulate, and receive the tolls and charges to be taken for the transportation of property and persons on the road subject only to a limitation as to passengers of three cents a mile, and ten cents in addition on distances not exceeding

30 miles. It was held that this gave the company a contract right to make any charge not in excess of the amount specified, and that this right could not be abridged by subsequent legislation not authorized by the charter. In opposition to these views, complainant relies upon a line of cases of which *Georgia Railroad & Banking Co.* v. *Smith,* 128 U. S. 179, is an illustration, which hold that similar language to that under discussion inserted in a statute does not prevent subsequent legislation reducing the charges. Those cases are not applicable. None of them are authorities for the proposition—and that is the proposition involved in this case—that before the enactment of such subsequent legislation, the rates prescribed in the statute could be enforced. Indeed, it is our understanding that all these cases proceed upon the theory that the prescribed rates governed until they were changed by legislation. We are therefore of the opinion that the ordinance under consideration gave defendant a right to charge 80 cents per thousand cubic feet for gas used for fuel.

3. Did the making of a 60-cent rate to those who use gas engines constitute an unjust or unlawful discrimination entitling complainant to relief? Defendant does discriminate in its charges for gas. It charges those who use gas for illuminating purposes 90 cents per thousand cubic feet; those who use it for fuel purposes 80 cents per thousand cubic feet; those who use it for power 60 cents per thousand cubic feet. The discrimination between the use for illuminating purposes and fuel purposes was authorized by the ordinance of the city of Detroit. The discrimination between the use for fuel purposes and the use for power purposes was not authorized by that ordinance. The ground of that discrimination is this: That those who use gas for power purposes use on an average much more than those who use it for fuel purposes, and that if they could not get it at the reduced rate they would use some other material for the purpose of creating power. Counsel for each party have elaborately briefed

the question of the lawfulness of this discrimination. We shall not however undertake to decide that question. It is not necessary to decide it in order to determine this case. The question is not likely to arise again, for since this suit was commenced a new ordinance has been passed by the city of Detroit authorizing that discrimination.

We do not undertake to decide the unlawfulness of the discrimination in question, because in our judgment it affords no ground upon which complainant is entitled to relief. Complainant is not entitled to relief because the rate of 80 cents per thousand cubic feet is too high, for that was the rate which defendant was entitled to charge. His claim for relief must rest upon the ground that the rate charged those who used gas for power purposes is too low. He cannot complain of this unless he is in some way injured. The circumstance that a manager of a public utility is granting unlawful favors to one of several individuals—and we do not decide that that was done in this case—does not give a right of action to every member of the community. That is a grievance to be redressed by the public. On principle it cannot be redressed by an individual unless he is specially aggrieved thereby. As was said in *Hays* v. *Pennsylvania Co.*, 12 Fed. 309:

"It may be said that it is only when the discrimination inures to the undue advantage of one man, in consequence of some injustice inflicted on another, that the law interferes for the protection of the latter."

See, also, *Hozier* v. *Railway Co.*, 17 Sess. Cases (2d Series), 302. The users of gas engines who receive the reduced rates were in no just sense competitors of complainant. The reduced rates gave them no undue advantage over him. They did not injure him. They therefore afford no ground upon which he can claim relief.

The decree dismissing complainant's bill is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MCALVAY, JJ., concurred.