# THE STATE ex rel. CHARLES I. JACOBS v. WATER, LIGHT AND TRANSIT COMPANY OF CARROLLTON, Appellant.

### Division Two, April 8, 1913.

1. **APPELLATE JURISDICTION: Motion to Retransfer to Court of Appeals: Overruled.** When the Supreme Court has overruled a motion to retransfer a case to the Court of Appeals the question of jurisdiction becomes *res judicata.*

2. **PUBLIC SERVICE CORPORATIONS: Rate Agreement: Evidence: Mandamus.** Defendant's predecessor was granted an electric light franchise in 1892 by which the rates were fixed for

State ex rel. v. Water, Light & Transit Co.

five years. Section 7 of the ordinance granting the franchise provided for a revision of the rates by arbitration at the end of each period of five years, and ended by saying: "The prevailing average current rates for like services in North Missouri cities and towns shall be the rates adopted at the end of each five years." The rates were accordingly readjusted in 1908, the agreement containing a provision as follows: "Incandescent lights and power to private consumers . . . twelve cents per kilowatt hour." Soon thereafter, when his bill as determined by the foregoing provision would have been fifty-four cents, relator was presented with a statement for one dollar, and upon his refusal to pay that sum his house was disconnected, the company contending that under the provisions of section 7 of the franchise ordinance it had the right to charge a minimum of one dollar a month as a reasonable charge and the average current rate in North Missouri cities and towns. Relator seeks by mandamus to compel the light company to serve him at the twelve-cent rate. *Held*, that when the rates for the five-year period were readjusted under the authority given by section 7, the rates thus fixed were controlling for that period, and evidence of other and different rates—of the average minimum rate in North Missouri towns, for example—is not admissible. Relator's rate should be twelve cents per kilowatt hour.

3. ————: ————: **Reasonableness of Rate: Constitutional Question.** When a public service company voluntarily agrees with the city as to rates, it cannot thereafter successfully contend that the rates thus fixed are unreasonable or confiscatory.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler*, Judge.

AFFIRMED.

*Jones & Conkling* for appellant.

(1)   The court erred in excluding legal and competent testimony offered by appellant, and by making its finding in favor of relator. Both the town of Carrollton and appellant are bound by and governed by the provisions of ordinance 32. Under the provisions of section 7 of said ordinance the defendant had a right to charge for a minimum service the rate that is charged for like services in North Missouri cities and towns. The contract made by the arbitrators and offered in evidence, prescribes a maximum service of 12

cents per kilowatt hour which of course binds both parties as to the maximum rate, but being silent as to a minimum rate, then, of course, to ascertain what the minumum rate shall be, recourse must be had to the franchise ordinance to determine what the minimum rate shall be, and when we look to the franchise ordinance as our guide, it provides: "The prevailing average current rates for like service in North Missouri cities and towns, shall be the rates adopted at the end of each five years." The contract does not forbid appellant from establishing a reasonable minimum rate; that is, the average prevailing current rates in North Missouri cities and towns, as provided by section 7 of said ordinance offered in evidence. To compel it to do so, would be an express violation of section 20, article 2 of the Constitution of Missouri, in that it would take defendant's private property for private use without due compensation and would be in violation of section 21 of article 2 of the Constitution of Missouri and of section 1 of article 14 of the Amendments to the Constitution of the United States, in that it would be to take and deprive defendant of its property, franchises and privileges without due process of law and would be depriving it of the equal protection of the laws.

*Busby & Busby* for respondent.

The court did not err in sustaining objections to questions asked witnesses Lozier and Summers. The proffered testimony was incompetent and inadmissible. Section 7 of the original franchise of August 9, 1892, provided that the rates for lighting service to both the town and private consumers should be revised and changed at the end of each period of five years by arbitration, and that the new franchise agreement of March 13, 1908, was made in pursuance of this original agreement, and that it was a full and complete change and revision of all rates for light service to

both the town and private consumers for a period of five years from February 1, 1908, to February 1, 1913, and it was not alleged or claimed by appellant that there was any fraud or mistake in the execution of the new franchise agreement, but the due execution of the new agreement was admitted, and the proffered testimony was therefore incompetent as an attempt to vary and control the new written agreement by oral testimony and outside matters. Appellant pretends to claim that it had the right at the time of removing its lighting service from respondent's residence to make a minimum charge of one dollar per month for incandescent light service under the following clause in section 7 of the original franchise, to-wit: "The prevailing average current rates for like services in North Missouri cities and towns shall be the rates adopted at the end of each five years," but this clause was simply to serve as a guide for the arbitrators in changing and revising the rates at the end of each five-year period, and, of course, when the arbitrators changed and revised the rates on March 13, 1908, and agreed to the new schedule of rates for the succeeding five years mentioned in the new agreement, then this clause as well as all other parts of the original franchise was merged into and swallowed up and superseded for a term of five years by the new agreement. Section 5 of the new agreement provides that appellant should furnish meter free and incandescent light service at a rate of twelve (12) cents per kilowatt hour, and this provision covered all charges that defendant might make, and defendant had no more right to demand a minimum charge of one dollar per month than any other rate not called for by the new contract.

WILLIAMS, C.—This is a proceeding by mandamus, instituted in the circuit court of Carroll county, Missouri, to compel the defendant Water, Light & Transit Company of Carrollton to

Mandamus.

connect its electric lighting system with relator's residence, and to furnish him with incandescent light service at his said dwelling at the ordinance or franchise agreement rate.

There is very little dispute as to the facts involved. The defendant company is the successor of the original grantee in a certain franchise duly granted by the city of Carrollton, and ratified by the voters of said city on the 29th day of August, 1892. Said franchise granted to the grantee therein and its successors and assigns, for a term of twenty years, the right to erect and maintain in the streets, alleys and public places of said city, its wires, poles, appliances and structures, for the purpose of supplying electric light and power to the inhabitants of said city, prescribed certain rules and regulations not pertinent to the discussion here, and fixed certain rates to be charged by said company for its services in furnishing and supplying its electricity. The rates provided by said franchise were not fixed for the full term of the franchise, but a provision was made in said ordinance whereby the rates could be readjusted every five years. Said provision is contained in section 7 of the ordinance, which section reads as follows:

"Sec. 7. It is further agreed that the rates herein given to the town of Carrollton and private consumers shall be subject to revision and change at the end of five (5) years in the manner herein provided, except that said rates shall never be increased more than ten per cent above the present rates. The mode of such revision shall be by arbitration, by a board to consist of two members, one to be appointed by the town of Carrollton, and the other to be appointed by the Missouri Water and Light Company. Any disagreement between them shall be referred to the circuit court of Carroll county, Missouri, on the petition of either party to this contract. The prevailing average current rates for like services in North Missouri

cities and towns shall be the rates adopted at the end of each five years.''

Acting under the provisions of the above section of the ordinance, the city of Carrollton and the defendant company appointed their respective arbitrators to act as a board of arbitrators to agree upon, readjust and fix the rates to be charged by defendant for the five-year period beginning February 1, 1908. The board of arbitrators thus selected agreed upon the rates to be charged during this period, and said contract was, on March 13, 1908, mutually confirmed and ratified by the said city and defendant. That portion of the rate agreement thus mutually agreed to, and affecting the controversy in suit, is as follows:

''Fifth. Incandescent lights and power to private consumers (meter to be furnished free by Water, Light & Transit Company), all day and all night service, twelve (12c) cents per kilowatt hour, with the following discounts if paid on or before the fifth of each month: Bills under ten ($10) dollars, ten per cent (10 per cent); over ten ($10) dollars and not exceeding fifteen ($15) dollars, fifteen (15) per cent; over fifteen ($15) dollars and not exceeding twenty ($20) dollars, twenty (20) per cent; over twenty ($20) dollars, and not exceeding twenty-five ($25) dollars, twenty-five (25) per cent; over twenty-five ($25) dollars, thirty (30) per cent.''

On or about May 1, 1908, relator, who had for some time been using and paying for defendant's incandescent light service in his dwelling house, went to defendant's office to pay his light bill, which was due on the first of said month. He was there presented with a bill or statement amounting to one dollar. The sum which relator owed at this time, if his bill is to be determined by the amount of electricity actually used, at twelve cents per kilowatt hour, was fifty-four cents. He refused to pay the dollar, but did offer and tender the sum of fifty-four cents, which tender was

refused by defendant company, the company, through its agent, explaining to him that it never charged less than one dollar, less ten per cent discount, for any month, whether the electricity consumed amounted in price to that sum or less. Later, the relator still refusing to pay more than fifty-four cents, the defendant, on May 12, 1908, disconnected its service from his dwelling and removed its meter therefrom. Shortly thereafter, relator made written demand upon the defendant to replace its meter and connect his said dwelling house with said electric service, and furnish him such service at the rate of twelve cents per kilowatt hour, and tendered the sum of $5 to be used by defendant in payment of any electricity which he had used or in the future might use. Defendant failing to comply with his said written demand, he instituted this proceeding.

There is no question raised or urged as to the sufficiency of relator's pleadings, and it is not necessary that they should be copied here. Defendant in its return to the alternative writ pleads the ordinance of August 29, 1892, and especially section 7 thereof, and further alleges in effect that the one dollar per month minimum charge is the average current rate for electric light service in North Missouri cities and towns, and that same is a reasonable charge, and that defendant is legally entitled to make such minimum charge under the provisions of said section 7; that, to justify defendant in making the necessary expenditure for meter, transformer, wire, etc., for the purpose of furnishing current and light for private residents, it is necessary that each private residence consumer consume at least one dollar's worth of electricity per month, and to require defendant to furnish such service for less than one dollar minimum charge per month would be unfair and confiscatory of defendant's franchise and privileges thereunder; that to require defendant to furnish such service for a less charge than

a dollar per month minimum charge, would violate (a) sections 20 and 21 of article 2 of the Constitution of Missouri, and (b) article 5, and section 1 of article 14 of the Amendments to the Constitution of the United States. For further return, defendant denied each and every allegation contained in the petition.

Relator's reply to defendant's return was a general denial, except that it admits the granting of the ordinance and that defendant was the successor of the grantee in said ordinance, and further avers that the rates under the original ordinance were changed and re-established by the rate agreement of March 13, 1908, which is pleaded in the petition.

Defendant offered to prove by witness Lozier that he was acquainted with the prevailing current rates in North Missouri cities and towns, and that the average rate for minimum service was one dollar per month. Defendant also offered to prove by witness Summers, an experienced electrician, that the service could not be furnished for a less rate than a minimum charge of one dollar per month; that a lower rate would be unreasonable, unprofitable and confiscatory, and that defendant, since it owned and operated the electric light plant, had collected a minimum charge of one dollar per month. The offer of the testimony of both said witnesses was, upon plaintiff's objection, refused by the court.

The court found the issues in favor of relator, and entered a decree ordering that a peremptory writ of mandamus issue against the defendant, directing defendant to restore the meter, connect the lighting system with relator's dwelling, and thereafter to furnish relator with incandescent light service at his dwelling at the rate of twelve cents per kilowatt hour, as provided by said rate agreement of March 13, 1908.

Defendant filed an affidavit in the circuit court asking for an appeal to this court, but the trial court granted an appeal to the Kansas City Court of Ap-

peals. After the cause had reached the Kansas City Court of Appeals, the same was, upon appellant's motion filed in that court, transferred to this court, on the ground that a constitutional question was involved. After the case was transferred here, respondent filed a motion in this court to have the case remanded back to the Kansas City Court of Appeals. This last motion was by the Court in Banc, on February 2, 1910, overruled.

Appellant contends that the trial court erred, first, in refusing to allow the appeal to the Supreme Court on account of constitutional questions involved; second, in refusing to admit. legal and competent testimony offered by appellant; third, in rendering judgment in favor of relator.

## OPINION.

I. The first assignment of error is now removed from the case. The fact that the case is here makes unnecessary further discussion as to appellant's contention, and the ruling of the Court in Banc (entered on the 2d day of February, 1910), overruling plaintiff's motion to remand the cause to the Kansas City Court of Appeals, is as to the jurisdictional question *res adjudicata,* and we will therefore proceed to the discussion of the merits of the case without further comment on the question of jurisdiction.

**Jurisdiction.**

II. As to the second assignment of error, appellant's contention is, that the prevailing average current rates for like service in North Missouri cities and towns was a dollar per month minimum charge or rate, and that the parties to this suit are bound by that portion of section 7 of the original ordinance which provides: "The prevailing average cur-

**Public Service . Corporation: Rate Agreement.**

rent rates for like service in North Missouri cities and towns shall be the rates adopted at the end of each five years.'' Appellant further contends that in the above situation it had a right to make proof of the rates in North Missouri cities, and that the court erred in refusing the offer of the testimony of witness Lozier. We cannot admit appellant's contention. Section 7 of the original ordinance did nothing more than prescribe a method for readjusting rates at the end of each five-year period, and to announce a guide or standard that should be used or applied when rates were to be readjusted. But when the rates for the five-year period were readjusted under the authority given by said section seven, with the mutual consent of the city and the defendant company, as evidenced by the contract between the city and the defendant company of date March 13, 1908, the rates thus fixed by said contract were controlling for the period covered thereby, and it would not be proper in this proceeding to admit evidence of other and different rates. Appellant in its argument admits that the contract referred to binds both parties as to the maximum rate, but insists that, since the contract is silent as to the minimum rate or charge, it is proper to show by outside evidence what the minimum rate or charge should be.

The contract is not silent with reference to rates to be charged for the service to be furnished consumers like the relator. It provided that as to incandescent light and power for private consumers, the defendant company should furnish the meter at its own expense and charge a rate of twelve cents per kilowatt hour. If appellant's contention were adopted, it would in effect, whenever applied, destroy the maximum rate, for the reason that a minimum rate or charge (the term is apt to be confusing) is never used save and except when it exceeds the sum total of the charge for service under the maximum rate.

This is not a proceeding to determine the reasonableness of rates, but merely to ascertain or determine what rates are or were in force, and then compel the enforcement of the service at such rates. It would therefore not be germane to the issues here to enter upon a discussion of the reasonableness or unreasonableness of a minimum charge or rate. What we do decide in this case is, that the contract dated .March 13, 1908, is controlling as to the rate which defendant was entitled to charge the relator at the time this suit was instituted and tried, and since said contract did provide a definite rate for the kind of service involved in this suit, and made no provision for a minimum charge, none can be brought to the aid of appellant as a defense in the present proceeding.

In the case of Louisville Gas Co. v. Dulaney & Alexander, 100 Ky. 405, the court, in refusing to allow the gas company to charge a rate similar to the one claimed by appellant in this case, said:

"Presumably the company was aware, when it obtained its charter and established its monopoly, that there would be small consumers as well as large ones, and there would be less profit in furnishing the one class than the other, but it did not on that account reject the charter or obtain the right to add to the price of the small consumer's bill."

.III. What has been said above dispenses in a large measure with the discussion of the third assignment, e. g., that the court erred in rendering judgment in favor of relator. Even if this were a case where the rate had been forced upon the appellant, and it was contesting the validity or reasonableness of the rate, and the evidence which was offered and refused had been admitted, yet the showing would not have been sufficient to cause the court to interfere. The correct rule in this regard is well stated in McQuillin on Municipal Corporations, vol. 3, sec. 1751, p. 3741, as follows:

*Constitutional Question.*

"It is immaterial that the rate is too low as to some customers, and hence a rate is not unreasonable merely because there would be a loss as to smaller consumers. The better rule seems to be that the company is not entitled to a reasonable profit upon each transaction, but that the regulation of rates is valid although it precludes a reasonable profit at all as to particular items of the business where a fair return will result from the rates as a whole."

Much more applicable is the above language to the case at bar; for in this case defendant gave its consent, and voluntarily entered into the rate agreement with the city. When a public service company voluntarily agrees with the city as to rates, it cannot thereafter successfully contend that the rates thus fixed are unreasonable or confiscatory. [4 McQuillin on Municipal Corp., sec. 1741.]

From the foregoing observations it becomes apparent that none of the constitutional guarantees invoked by appellant are violated by reason of the enforcement of the rate agreement which it voluntarily executed. The judgment of the circuit court is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur, except *Faris, J.,* who does not sit.