HACKENSACK WATER COMPANY, RESPONDENT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., APPELLANTS.

HACKENSACK WATER COMPANY, RESPONDENT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., APPELLANTS.

Argued April 14, 1921 — Decided November 14, 1921.

1. The Court of Errors and Appeals will not consider alleged errors of fact in a review of a judgment of the Supreme Court in a *certiorari* case. where there was any proof in the case to support such judgment.

2. When a public utility company increases its rates and files a schedule thereof with the board of public utility commissioners, the increased rates go into effect upon the date specified in the schedule, unless the board determines to investigate the propriety of the proposed increase, and makes an order suspending the new proposed rates. When the board takes this course, the new rates do not become effective until the expiration of the time limited in that order.

3. When an order of the public utility commissioners, reducing a proposed scheduled rate, was set aside and nullified by the Supreme Court, the right of the company to charge the scheduled rate became complete. unless and until the judgment of the Supreme Court should be reversed or until some further order of the board upon rehearing.

4. It was the intent of the legislature that the exercise of the powers conferred upon the public utility board should be controlled not only by the statute itself, but by the settled rules and principles of the common law.

5. A contract between a municipality and a water company, fixing the rate to be charged for service, imposes no restrictions on the sovereign power of the state to fix just and reasonable

rates as subsequent conditions may make desirable, and when the state, through its board of public utility commissioners. exercises its sovereign power over rates, the contract rights of the parties must yield.

6. The power to fix rates is not a judicial function, but a legislative one, and the state has created the board of public utility commissioners as its agent for that purpose. An attempt by the Supreme Court to fix a rate is in its essence an attempt to exercise a sovereign power which has not been delegated to it by the state, but which resides solely in the legislative and executive branches of the government.

On appeal of the Hackensack Improvement Commission, and the borough of Tenafly, from a judgment of the Supreme Court, whose opinion is reported in 95 N. J. L. 295.

On appeal of the city of Hoboken from the same judgment.

For the respondent, *Collins & Corbin.*

For the city of Hoboken, *John J. Fallon.*

For Hackensack Improvement Commission, *Wendell J. Wright.*

For the Public Utility Board, *L. Edward Herrmann.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The judgment appealed from, so far as it affects Hackensack and Tenafly, was entered in a *certiorari* proceeding instituted by the Hackensack Water Company to review the action of the board of public utility commissioners fixing the rates to be charged by that corporation to various municipalities that it supplied with water under powers conferred upon it by its charter. The situation developed by the proofs was this:

On the 28th day of July, 1920, the water company formally notified forty-six of the municipalities supplied by it that on and after the 1st day of August then next the rates charged for water would be increased to each one of them by seventeen and a half per cent. At the same time the

company filed a schedule of the proposed increased rates with
the board of public utility commissioners.    Thereupon an
investigation was instituted by the board for the purpose of
determining whether the proposed increase was justified;
and the various municipalities interested, as well as the water
company, were afforded an opportunity to be heard upon this
matter.    Upon the conclusion of the hearing the board de-
cided that the proposed increase was excessive, but that the
water company was entitled to a greater remuneration than
it had been theretofore receiving, and authorized it to increase
its rate by nine and one-half per cent. in the case of each
one of the municipalities.    Upon the rendition of this deci-
sion the company, considering that the rate thus fixed was
unjust and unreasonable, because it was insufficient to pro-
duce an income which would be fairly remunerative in view
of the amount of capital invested, sued out a writ of *certiorari*
to review the action of the board; and, after a hearing had
upon the return of the writ, the Supreme Court concluded
upon the proofs taken before the board that the rate allowed
by its order was an unjust and unreasonable one and directed
that the order be set aside, and the proceeding be remanded
to the board for a rehearing and a refixing of rates for the
water company in accordance with the principles laid down
by the court in its filed opinion.    The court further ordered
that pending a rehearing by the board, or pending the hearing
of an appeal from its judgment to this court (in case such an
appeal should be taken), the scheduled rate filed with the
board should be effective.

From this part of the judgment the Hackensack Improve-
ment Commission and the borough of Tenafly have appealed.

The first contention made before us by these two munici-
palities is that the Supreme Court "had no jurisdiction to
set aside the order of the board of public utility commis-
sioners."    The ground of this contention is that the power
of the Supreme Court in a case like that now before us is
a limited one, conferred upon it by section 38 of the Public
Utilities act of 1911, as amended in 1918.    *Pamph. L.* 1918,
*p.* 305.    By that statutory provision the court is given juris-

diction by *certiorari* to review orders of the board and to set them aside when it clearly appears that there was no evidence before the board which would reasonably support the same, or that they were not within the jurisdiction of the board; and the argument is that in the present case the evidence reasonably supported the order which was subjected to review. It is not necessary, for present purposes, to stop to consider the question whether the legislature can constitutionally restrict the powers of the Supreme Court in dealing with matters brought up by its prerogative writ of *certiorari*. Assuming for present purposes that it can do so, the Supreme Court, in this case, has held, by necessary inference, that the evidence before the board would not reasonably support its conclusion that the rate fixed by it was a just and fair one.

This is a finding of fact, and the only question which this court will consider on a review of such a finding by the Supreme Court is whether there were any proofs whatever in the case to support it; for it is entirely settled that we will not consider alleged errors of fact in a review of a judgment of the Supreme Court, but only alleged errors of law. *Vreeland* v. *Bayonne*, 60 *N. J. L.* 168; *Beecher* v. *Board of Street and Water Commissioners*, 65 *Id.* 307; *Tuckerton Railroad Co.* v. *State Board of Assessors*, 77 *Id.* 614.

Looking at the proofs which were sent up with the writ of *certiorari*, we find sufficient evidence to support the Supreme Court's determination of fact. These appellants, therefore, can take nothing by this ground of appeal.

The next contention is that the Supreme Court, by adjudging that these municipalities should pay to the water company the increased rates fixed by the schedule of July 28th, 1920, pending a rehearing by the board or a review by this court, exceeded its jurisdiction because it has no power to fix rates. But this contention is based upon a misapprehension of what the court really did. By the sixteenth section of the Public Utilities act, item *d* (*Pamph. L.* 1911, *p.* 377) every public utility corporation is required to file with the board a complete schedule of the rates it proposes to charge

for any product supplied by it.   By the seventeenth section, item *g,* whenever a public utility corporation shall file a schedule exhibiting an increase of an existing rate the board is authorized, either upon the complaint of the party affected by the increase or on its own initiative, to hear and determine whether the increase is just and reasonable; and it is given power, pending such hearing and determination, to suspend the increased rate for a period not exceeding three months.   The situation then created by the statute is this: When a public utility company increases its rate and files a schedule thereof with the board the increased rate goes into effect upon the date specified in the schedule, unless the board determines to investigate the propriety of the proposed increase, and makes an order suspending the proposed new rate.   When the board takes this course the new rate does not become effective until the expiration of the time limited in that order.   But at the expiration of that period the scheduled rate becomes automatically effective.   So that, in the present case, therefore, when the order of the board, reducing the scheduled rate, was set aside and nullified, the right of the company to charge that rate became presently complete, unless and until the judgment of the Supreme Court should be reversed by us in case an appeal should be taken, or until some further order should be made by the utilities board upon a rehearing.   The part of the judgment which is challenged by this ground of appeal is merely an expressed declaration of the right of the water company under the statutory provision which I have cited, and consequently cannot be successfully attacked.

The only other matter argued by these appellants is that the judgment under review is erroneous because it commands the board of public utility commissioners "to fix rates for the prosecutor in accordance with the principles laid down by this court in this cause."   It is contended that this part of the judgment is in conflict with the Public Utilities act which clearly intends that the powers of the board shall be free and unrestricted, except as limited by the statute itself. But we are not willing to concede that it was the purpose of

the legislature to clothe this board with powers to be exercised by it without regard to established legal rules or principles. On the contrary, we are entirely satisfied that it was the intent of the legislature that the exercise of these powers should be controlled not only by the statute itself but by the settled rules and principles of the common law. And as we construe this part of the judgment that is all that the Supreme Court commanded this board to do; that is, to fix rates in accordance with the (legal) principles laid down by the court; and there is no suggestion in the argument of counsel that these principles are in any degree unsound.

Our conclusion, therefore, on the appeal of these two municipalities is, that so far as they are concerned, the judgment under review must be affirmed.

The appeal of the city of Hoboken from that part of the judgment which affects it presents a different question from that which has already been considered. The proofs sent up with the writ show that some twenty years ago this municipality and the Hackensack Water Company entered into a contract by which the rates to be paid for the water furnished by the company to the municipality were fixed for the full term of the contract, which has not yet expired. That, in September, 1919, owing to the fact that the cost of labor and material had increased very greatly, the contract rate had ceased to be remunerative; and that for this reason, the company filed a petition with the board, asking it to increase the rates beyond those fixed by the contract to such an extent as to return a fair compensation to the water company for the capital invested and for the services rendered. That the board, after considering this petition, dismissed it on the ground that there was no such emergency confronting the company as would justify an alteration of the contract rate. That later, and during the hearing upon the question of the propriety of increasing the rate to the forty odd municipalities, specified in the schedule which has been referred to in the earlier part of this opinion, the company filed another petition asking the board to take up, as

a matter necessarily involved in that hearing, the propriety
of increasing the rate charged to Hoboken, and if it was
found that the existing contract rate was unjust and discrimi-
natory, when compared with that paid by the other munici-
palities, "to make an order fixing just and reasonable rates
to be imposed" upon the city of Hoboken. And that the
board, having received this second petition, after considera-
tion, refused to grant the application for the same reason
which led it to dismiss the earlier one.

The water company, by the *certiorari* which it sued out,
sought to review not only the propriety of the order of the
board fixing the rates to be charged to the forty odd munici-
palities, but also that part of its order which refused to con-
sider its application with relation to the Hoboken rate. The
Supreme Court, dealing with this phase of the case, adjudged
that the order of the board determining that no action should
be taken with respect to the rates paid by the city of Hoboken
be set aside, that the board take up the consideration of
this matter and fix a proper rate to be charged to that munic-
ipality, and "file a rate charging the city of Hoboken the
same surcharge as it makes to every other of its consumers;"
and that, pending the rehearing or an appeal to this court,
Hoboken pay the same rate as the other municipalities.

On this appeal Hoboken contends, first, that the board has
no authority to override a contract rate fixed by the agree-
ment of the company and municipality; and second, that
the Supreme Court is without power to compel the board to
fix a rate charging the city of Hoboken the same surcharge
as it makes to every other of its consumers.

The first point, we think, must be decided adversely to
the appellant's contention. It may be conceded that neither
the city of Hoboken nor the water company can alter this
contract without the consent of the other party to it, but
as was said by this court in *Atlantic Coast Electric Railway
Co.* v. *Public Utility Board*, 92 *N. J. L.* 168, 173, a contract
of this kind imposes no restriction on the sovereign power
of the state to fix just and reasonable rates as subsequent
conditions may make desirable. It is a contract subject to

the state's sovereign power over rates, and when the state through its board of public utility commissioners exercises its sovereign power over rates the contract rights of the parties must yield. And in the later case of *Collingswood Sewerage Co.* v. *Collingswood, Id.* 509, 511, where a somewhat similar contract between the utilities company and the borough was under consideration, this court said: "The municipalities are exercising a mere delegated authority, are acting as mere agents of the legislature. It cannot be doubted that if * * * the sovereign itself fixes the maximum charge to be made, it would have power to change the rate whenever in its judgment conditions arose which justified such action. To hold that by delegating the rate-fixing power to its creature it had deprived itself of the right thereafter to modify the rate would be tantamount to declaring that the creature is greater than the creator. It would be strange, indeed, if the state, which has power to terminate the existence of the municipalities created by it whenever it may see fit, could not revoke authority granted by it to them, and, in the exercise of its sovereignty, cancel conditions which it had permitted them to impose upon other classes of corporations which had also been created by it."

Turning to the second proposition, we have no doubt of the power of the Supreme Court to send the case back to the board where it appears to the court that the action complained of was the result of a misapprehension by the board as to the duty imposed upon it by the statute with relation to the matters contained in the water company's petition. We consider, however, that the court exceeded its jurisdiction in commanding the board to fix the same rate to be charged to the city of Hoboken as that fixed for every other of the company's municipal consumers. The power to fix the rate is vested in the board of public utility commissioners by the statute, and the twenty-eighth section declares that when the Supreme Court shall order a rehearing the board shall thereupon proceed to it on the testimony theretofore taken before it, and upon which the order under review is based, and upon such additional testimony, if any.

as may be produced before it, and that as the result of such rehearing the board may readopt such order or alter, amend, modify or extend it. The action of the Supreme Court, in declaring the rate to be fixed by the board, is in disregard of this statutory power conferred upon the latter, and which it is entitled to exercise without any limitation put upon it by the court. The power to fix rates is not a judicial function, but a legislative one, and the state has created the board of public utility commissioners as its agent for that purpose. An attempt by the Supreme Court to fix a rate is in its essence an attempt to exercise a sovereign power which has not been delegated to it by the state, but which resides solely in the legislative and executive branches of the government.

We conclude, therefore, that the judgment of the Supreme Court to the extent just indicated must be reversed.

What we have just said is equally applicable to that part of the judgment which authorizes the Hackensack Water Company to charge the city of Hoboken the same rate which it charges the other municipalities in this litigation, pending an appeal or a rehearing. The effect of the judgment setting aside the order of the utilities board was, as we have already indicated, to restore the conditions which existed prior to the making of that order. The city of Hoboken was at that time paying the contract rate, and that contract rate was left unaltered by the board. The Supreme Court was without power to substitute what it considered a fair rate for that which then existed, and its attempt to do so was extrajudicial for the reason already indicated.

The water company undertakes to justify this part of the judgment upon the theory that it is warranted by a provision contained in the latter part of section 38 of the Public Utilities act, as amended in 1918, which provides that "The Supreme Court may order that such rehearing be had upon such terms and conditions as are reasonable." But this provision must be construed in the light of the situation with which the legislature was dealing, and that is a case where a party claiming to be aggrieved by the order of the board sought to have that order set aside by *certiorari* and a re-

hearing by the board directed. The rehearing, if it be granted, is granted to the party suing out the writ, and the terms and conditions referred to in the statute are such as the court may consider proper to be imposed upon the party in whose favor the rehearing is granted. To hold otherwise would be to attribute to the legislature an intent to impose a penalty upon a party to the litigation who protested against the rehearing in addition to the granting of the relief sought by the prosecutor. No such purpose should be attributed to the law making body unless it is clearly and unquestionably expressed in the statutory provision.

The judgment under review, so far as it affects the city of Hoboken, will be reversed to the extent indicated.

On the appeal of Hackensack Improvement Commission and the borough of Tenafly:

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.

*For reversal* — None.

On the appeal of the city of Hoboken:

*For affirmance* — None.

*For reversal* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.