(No. 2681.    March 29, 1924.)

## TOWN OF GALLUP v. GALLUP ELECTRIC LIGHT AND POWER CO.

### SYLLABUS BY THE COURT.

1. A demurrer to an answer tendering no issue of fact is properly sustained.

2. A franchise contract, providing a rate for electric current generally, fixes the rate for all purposes, including current for power.

3. Where maximum rates are fixed in a franchise contract, they cannot be increased by the public service company by any device or subterfuge, such as a "ready to serve" or "minimum" charge.

4. Cities and towns have power to contract with public service companies for rates to their inhabitants for electrical current for power purposes, which contracts are valid and binding upon the parties until the state intervenes and exercises its regulatory power.

5. A contract between a municipality and a public utility company is not invalid because a portion of the service contracted for is without the power of the municipality.

6. A municipality may maintain an action for injunction against a public utility company to restrain it from exceeding the contract rates for electric current.

7. Where there is a contract between a town and a public utility company as to rates for electric current, the fact that the rate has become noncompensatory is no defense to the enforcement of the contract.

Appeal from District Court, McKinley County; Hickey, Judge.

Suit by the Town of Gallup against the Gallup Electric Light & Power Company. Judgment for plaintiff, and defendant appeals. Affirmed, and cause remanded.

J. W. Chapman and E. A. Martin, both of Gallup, and C. J. Roberts and C. F. Cornell, both of Santa Fe, for appellant.

Burkhart & Coors, of Albuquerque, and Alfred Ruiz, of Gallup, for appellee.

OPINION OF THE COURT.

PARKER, C. J. The appellee brought a suit against the appellant for an injunction prohibiting the making of certain charges for supplying electricity for power purposes in the town of Gallup, upon the theory that they were in excess of rates allowable under the contract of the appellant. The complaint sets out a schedule of charges which the appellant had put in force during the month of January, 1921, and alleges that such rates are grossly in excess of the maximum meter rates fixed by the ordinance and franchise under which the appellant was operating. A demurrer was interposed to the complaint and overruled.

Thereupon appellant filed its answer, and thereafter, upon the sustaining of a demurrer thereto, filed its amended answer, in which it admits all of the material facts pleaded in the complaint, but denies that the rates charged by it are grossly in excess of the maximum rates fixed by the franchise ordinance, or in excess at all of said franchise rates. Appellant admitted in the answer that it was charging and demanding from its customers a ''service charge'' and a ''minimum charge,'' and alleged that the said service charge and minimum charge were not made for electrical energy consumed, but were charges made to compensate the appellant for the maintenance of a plant and equipment adequate to maintain a constant service to consumers. The answer contained a second and separate defense to the effect that the maximum rates specified in the said franchise ordinance were unreasonably low; that their enforcement would deprive appellant of re-

muneration for services performed, and if enforced would deprive appellant of its property without due process of law.

Appellee demurred to this amended answer upon the ground that all the material allegations of fact contained in the complaint were admitted by the appellant, and that the only denials in said answer were conclusions of law, and that as to the second and separate defense it did not state facts sufficient to constitute a defense to the complaint.

This demurrer was sustained, and, the appellant electing not to plead further, the appellee moved for judgment on the pleadings, which motion was sustained, and a final judgment was entered against the appellant enjoining it from collecting more than the contract or franchise rate of 15 cents per kilowatt hour, either directly or by means of a service charge or minimum charge. From this judgment the case is here on appeal.

[1] 1. At the threshold of the inquiry, there appears the question as to the action of the court in granting a motion for judgment on the pleadings. A solution of that question, in turn, depends upon the action of the court in sustaining a demurrer to the amended answer. The complaint is framed upon the theory, not that a charge for electrical current actually supplied for power purposes is being made in excess of the contract price, but that by means of a "ready to serve" and a "minimum" charge, the service is so loaded that the ultimate charge to the consumer is in excess of the contract price. The amended answer denies that appellant is charging in excess of the contract price for current, but alleges it is making a "service" and a "minmium" charge, which charges are not controlled by the contract. There is no denial that the charge for current, plus the "ready to serve" and "minimum" charge, does exceed the contract price to the consumers. It thus appears that the answer did not tender an issue of fact, but rather an issue of law as to whether the "ready to serve" and the "minimum" charges are in legal effect charges for current. It appears that the court was correct in sustaining the demurrer to the answer in so far as this proposition is concerned, and

the objection to the judgment on the pleadings cannot be sustained on the ground contended for.

[2] 2. It is argued that the contract does not regulate charges for power current, and that, consequently, the "ready to serve" and "minimum" charges for power purposes are allowable. The charter or contract, after fixing flat rates per month for each 16 candle power lamp for both residences and business places, and for arc lamps, contains the following provision:

"Meter Rates. Business and Residences.—Fifteen cents per hour for one thousand watts."

A lengthy argument is put forward in the briefs to the effect that the contract must be viewed from the circumstances surrounding the parties at the time the contract was made (June 28, 1899); that at that time electricity was not commonly used for power purposes; that at that time meters for measuring electricity were so imperfect as to be almost impracticable; that commercial motors were unknown, except in large industrial plants and for operating street railways; and other suggestions are made along the same line. Counsel admit that no direct provision was made in the contract limiting the rate of charge to current for lighting purposes, and that the contract does not specify for what purposes the current is to be used; but they argue that it would be a strained construction of the contract to hold that it regulates rates for power purposes, in view of the circumstances surrounding the parties at the time it was made.

A single consideration would seem to be sufficient to dispose of this contention. The contract provides for a meter rate maximum charge for current used for light, power, or any other purpose of 15 cents per kilowatt hour. This provision is clear and unambiguous, and neither requires nor admits of construction. In such a case there is nothing to do except to enforce the contract according to its plain terms.

[3] 3. It is argued that the "ready to serve" and "minimum" charges are not controlled by the contract, and hence are allowable. This position is clearly untenable. Where a maximum charge is fixed by contract, no device or subterfuge can be resorted to

to increase the charge over the contract rate. 20 C. J. Electricity, § 331; Iowa R., etc., Co. v. Jones Auto Co., 182 Iowa, 982, 164 N. W. 780; State v. Carrollton, 249 Mo. 649, 155 S. W. 826, Ann. Cas. 1914D, 452; McInnich v. Auburn Mut. Lighting, etc., Co. 99 Neb. 582, 156 N. W. 1075; Louisville Gas Co. v. Dulaney, 100 Ky. 405, 38 S. W. 703, 36 L. R. A. 125; Montgomery L. & P. Co. v. Watts, 165 Ala. 370, 51 South, 726; 26 L. R. A. (N. S.) 1109, 138 Am. St. Rep. 71.

[4] 4. Appellant urges that cities and towns in New Mexico have no power to make contracts of the kind involved here, and that, consequently, the contract is unilateral, and therefore not binding upon the appellant. The statutory provisions on this subject are as follows:

### Section 3532, Code 1915:

"Cities and towns organized as provided in this article shall be bodies politic and corporate, under such name and style as they may select at the time of their organization, and may sue or be sued, contract, or be contracted with, acquire and hold property, real and personal, have a common seal which they may change and alter at pleasure, and have such other privileges as are incident to corporations of like character or degree, not inconsistent with the laws of the state."

### Section 3564, Code 1915:

"The city council and board of trustees in towns shall have the following powers:    *    *    *

"Seventh. I. To lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks, and public grounds, and vacate the same, and to direct and regulate the planting of ornamental and shade trees in such streets, avenues and public grounds.    *    *    *

"III. To regulate the use of the same.    *    *    *

"Ninetieth. All towns and villages shall have power to grant, by ordinances, franchises and privileges for street car lines, water works, lighting purposes and other public conveniences and comforts, for the furnishing of which such franchises and privileges are necessary.    *    *    *

"Ninety-Third. That any city or town shall have the power to regulate by resolution or ordinance the prices to be charged by any individual firm, copartnership or cor-

poration, for gas, electric lights, and water furnished by said individual firm, copartnership or corporation, to such cities or towns of this state or any of the inhabitants resident therein."

It is argued by counsel for appellee, in support of the judgment below, that the foregoing statutory provisions grant the power to cities and towns to make valid contracts for the use of their streets for conveying and distributing electrical current to such cities and towns and the inhabitants thereof, and that therefore, having the right to contract, the town of Gallup had the right to impose the conditions which it did in granting the charter to the appellant's predecessor in title. On the other hand, the appellant argues that these statutory provisions are insufficient to authorize the town of Gallup to make a valid contract, such as it did make, thereby rendering the contract of no binding force upon either of the parties thereto.

In approaching the question, it may be well to note some important considerations. It is always to be borne in mind that the power to regulate rates is a governmental power and an entirely different and distinct power from the power to contract for rates. While it is true that the state may surrender, temporarily, this governmental power of regulation of rates to be charged the people for public service, either directly, or by granting municipalities power to make binding contracts as to rates for a reasonable time, owing to the importance to the people of the conservation of the regulatory power, its surrender is never to be presumed nor allowed except where so declared in express terms or by necessary implication. It is to be observed that the contract, spoken of in this connection, is a contract which gives the public utilities company a vested right to charge the rates specified, and one which can withstand the subsequent attempted exercise of the governmental power of regulation, either by the state directly, or any of its agencies, such as commissions or municipalities, when properly authorized to exercise the power, and is such a contract as is protected by the constitutional guaranties against the impairment of its obligation.

But there are contracts of another class which mu-

nicipalities may make with public service corporations in regard to rates which are not intended by the parties · to withstand the subsequent exercise of the governmental power of regulation, but which are valid as between the parties until the state elects to intervene and regulate rates. It is frequently said that such a contract is made by the municipality in its private or business capacity, not in its governmental capacity. That such · contracts entered into by a municipality having the power to contract, and to regulate the use of the streets, and grant franchises, as ours have, are valid and binding upon both parties thereto, see Charles Simon's Sons Co. v. Maryland Teleph. & Teleg. Co., 99 Md. 141, 57 Atl. 193, 63 L. R. A. 727; Boerth v. Detroit City Gas Co., 152 Mich. 654, 116 N. W. 628, 18 L. R. A. (N. S.) 1197, and note; Muncie Natural Gas Co. v. Muncie, 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822; St. Mary's v. Hope Natural Gas Co., 71 W. Va. 76, 76 S. E. 841, 43 L. R. A. (N. S.) 994; City of Benwood v. Public Service Commission, 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C, 261, and note; Bluefield Waterworks & Improvement Co. v. City of Bluefield, 69 W. Va. 1, 70 S. E. 772, 33 L. R. A. (N. S.) 759, 764; Athens Telephone Co. v. City of Athens, (Tex. Civ. App.) 182 S. W. 42; Town of Pocahontas v. Central Power & Light Co., 152 Ark. 276, 244 S. W. 712; Lenawee County Gas & Elec. Co. v. Adrian, 209 Mich. 52, 176 N. W. 590, 10 A. L. R. 1328; Hackensack Water Co. v. Board of Public Utility Com'rs, 96 N. J. Law, 184, 115 Atl. 528; Water, Light & Power Co. v. City of Hot Springs (D. C.) 274 Fed. 827; City of Mitchell v. Board of Railroad Comrs., 44 S. D. 430, 184 N. W. 246; Traverse City v. Michigan Railroad Commission, 202 Mich. 575, 168 N. W. 481, 482; Salt Lake City v. Utah L. & T. Co., 52 Utah, 210, 173 Pac. 556, 3 A. L. R. 715. See, also, 4 McQuillen, Mun. Corp. § 1738; 3 Dillon, Mun. Corp. (5th Ed.) § 1326; 7 Fletcher, Cyc. Corp. § 4473. It seems clear, therefore, that· in so far as the fixing of rates by contract for electric current for power purposes is concerned, which is the only matter involved in this case, the town of Gallup had the power to make the contract, and both it and the utility company are bound thereby; there having been no attempt on the

part of the state, or any state agency, to exercise the regulatory power.

[5] 5. In this connection counsel for appellant suggest that the contract for electric current for all forms of use must be construed as entire, and the town being at the time clothed with the legislative power to regulate rates for lights, and consequently having no power to contract away its legislative power, the whole contract should be held void. Reliance is had upon the case of Fancher v. County Commissioners, 28 N. M. 179, 210 Pac. 237. In that case, however, it was clear that the whole quantity of service was of the essence of the contract. Not so in this case. It cannot be said that the company would have refused to accept the contract and put in its plant because a part of its service was subject to the regulatory power granted to the town and part of it was not. Nor can it be said that the town would have refused the franchise because part of the service was subject to regulation and part was not. No intention of the parties can be drawn from the contract or the circumstances that the same rules must be applied to both forms of service. The argument therefore fails.

[6] 6. Appellant complains of the action of the court below in overruling its demurrer to the complaint upon the ground that the city was without power to maintain the action from lack of interest. That the town can maintain such an action under these circumstances, see Mobile Electric Co. v. Mobile, 79 South. 39, L. R. A. 1918F, 667; Cleburne Water, Ice & Lighting Co. v. City of Cleburne (Tex. Civ. App.) 35 S. W. 733; St. Marys v. Hope Natural Gas Co., 71 W. Va. 76, 76 S. E. 841, 43 L. R. A. (N. S.) 994, and authorities cited.

[7] 7. Appellant further complains of the action of the court in sustaining the appellee's demurrer to the paragraph of its answer in which it alleged that the present rates, as fixed by the ordinance, are noncompensatory and confiscatory. That such fact, if true, is no defense to the enforcement of a valid contract, see Columbus R. P. & S. Co. v. City of Colum-

bus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648 and note; Lenawee County Gas & E. Co. v. Adrian, 176 N. W. 590, 209 Mich. 52, 10 A. L. R. 1328, and note.

From all of the foregoing it appears that the judgment of the trial court is correct and should be affirmed, and the cause remanded, with directions to put the decree into effect; and it is so ordered.

BRATTON, J., and HOLLOMAN, District Judge, concur.