## WATER, LIGHT & POWER CO. v. CITY OF HOT SPRINGS, S. D.

### (District Court, D. South Dakota, W. D. July 13, 1921.)

1. **Electricity ⬡11—Cities in South Dakota may make valid contracts fixing rates of electric company.**

    The statutes of South Dakota (Pol. Code 1903, § 1229) which authorize municipal corporations, to provide for lighting streets and public grounds, to regulate openings for laying gas or water pipes, and the erection of electric light poles, and provide that any company organized for the purpose of manufacturing gas or electricity "has the right, by consent of the city council, to lay down pipes or string wires on poles in the streets and alleys of any city in this state, subject to such regulations as such city may by ordinance impose," confer no power upon a city to regulate or change rates to be charged for electric current, and a city, in granting a franchise to an electric company, may by contract, accepted by the company, fix maximum rates of charge for a stated term, which contract is valid and binding during the term, regardless of the fact that the rates so fixed are or may become confiscatory.

2. **Constitutional law ⬡205(1)—Franchise ordinance and contract with electric company not grant of special privilege or immunity.**

    The provision of Const. S. D. art. 6, § 12, that "no law making any irrevocable grant of privileges, franchises or immunity shall be passed," *held* not violated by a city ordinance granting a franchise for a term of years to an electric company, including a contract fixing rates to be charged by the company.

In Equity. Suit by the Water, Light & Power Company against the City of Hot Springs, S. D. On motions by defendant to dissolve preliminary injunction and to dismiss bill. Motions granted.

Helm & Lewis, of Hot Springs, S. D.; and M. F. Harrington, of O'Neill, Neb., for plaintiff.

Martin & Mason, of Deadwood, S. D., for defendant.

ELLIOTT, District Judge. [1] It appears by the bill of complaint filed in the above-entitled case that plaintiff is the holder of franchises in the city of Hot Springs, S. D., for the furnishing of electricity for heat, light, and power, and for water. The rights of the parties are dependent upon a construction of their relations in the light of the provisions of the statutes of the state of South Dakota and the Constitution of said state, as they existed in August, 1913. At that time the city of Hot Springs was duly organized as a municipality under the general law of the state of South Dakota, and as such was vested with the powers granted by the general statutes of the state as they existed at that time, as hereinafter quoted and referred to.

It is alleged that in August, 1913, the defendant adopted and passed a franchise in favor of and granting rights to the plaintiff, which franchise fixed certain rates for light and power and fuel. A copy of the franchise is annexed to the bill, and it is unnecessary for me to include an analysis of its provisions here. On the 30th day of July the defendant passed, adopted, and put in force, as it did the franchise just referred to, another franchise whereby it fixed the charges for

water, and a copy of that franchise is also annexed to the bill. Both of these franchises were to be operative for a period of 20 years, and also contained a provision giving the defendant the right to purchase the property of the plaintiff, and a provision with reference to extensions in the event purchase was not made.

It is further alleged that the city council of defendant now threaten to disallow increased rates, and to compel the plaintiff to furnish light, power, fuel, and water at the respective rates named in the said franchises. Then follow allegations as to the value of the property, income therefrom under the conditions that exist, with proper allegations showing the inadequacy of the prices named in the franchise to return a profit upon the actual investment, and therefore the allegation that the rates named in the franchises are confiscatory, and that to compel plaintiff to furnish either light, power, fuel, or water at the rates named in the franchise will deprive it of its property without due process of law, and in violation of the Fourteenth Amendment to the Constitution of the United States, and will not furnish it any reasonable return upon the actual, fair, just, and reasonable value of its property.

The bill of complaint was presented to this court by the plaintiff, with a prayer for an injunction, pending litigation, restraining the defendant from interfering with the plaintiff in the collection of its increased rates until the further order of the court. No notice had been given the defendant, but, owing to the distance counsel were from the residence of the court, plaintiff's counsel being at O'Neill, Neb., and Hot Springs, S. D., and the defendant and its counsel being at Hot Springs, S. D., the court signed such order, instead of an order to show cause, with the understanding with counsel for the plaintiff that they would take the matter up with counsel for the defendant and agree with them upon a date, meeting the convenience of both, for the presentation of a motion to modify or discharge the order of injunction, or such other motions as defendant might see fit to make.

Pursuant to that understanding, counsel appeared before the court on the 24th of June, 1921, and counsel for defendant filed a motion to dissolve and discharge the temporary injunction issued herein, for the various reasons therein stated, among others: (1) That the court is without jurisdiction to grant such injunction; (2) that it is apparent upon the face of the bill of complaint upon which the temporary injunction was issued that there was no jurisdiction in this court to hear, try, or determine the alleged cause of action set forth in the bill of complaint, or to issue the temporary injunction; (3) that the said bill of complaint upon its face does not state facts sufficient to constitute a cause of action in equity against the defendant.

At the same time defendant also filed a motion to dismiss the bill of complaint filed herein for all the reasons stated in said motion, upon the following grounds: (1) That the court is without jurisdiction to hear, try and determine the alleged cause of action; (2) that it is apparent upon the face of the bill of complaint herein that the bill of complaint herein does not state facts sufficient to constitute a cause of action against the defendant; (3) that it is apparent upon the face of the bill of

complaint that such bill of complaint does not state facts sufficient to constitute a valid cause of action in equity.

It was thereupon agreed by and between counsel that the motions should be presented together. After hearing counsel for the plaintiff and defendant upon the issues involved, briefs were filed, and such motions are now to be determined.

Upon the motion to dissolve and discharge the temporary injunction, defendant made a showing as to the value of the property, its income, etc., disputing the facts stated in the bill of complaint, wherein it is alleged that the rates as fixed by the ordinances are confiscatory. Certain other proofs were filed by the plaintiff, sustaining the allegations of the bill.

I am of the opinion that upon this motion the court cannot determine this issue. This is the material issue upon which plaintiff's demand for relief is founded, and there not only appears a reasonable ground for the allegation, but it appears that the plaintiff herein is acting in the utmost good faith. If the plaintiff has stated a cause of action, I am of the opinion that the plaintiff is entitled to the protection of the order pending litigation. I therefore do not think that this showing as to the value of the property and income, in support of the motion for dissolution and discharge of the injunction, should be seriously considered at this time.

The other ground stated in the motion to dissolve and discharge the injunction, and defendant's motion to dismiss the bill of complaint (which under our old practice would have been a demurrer), both raise the question of law which is determinative of the right of the plaintiff to proceed in this action.

The defendant, in presenting its motion, contends that the ordinances were contracts, and therefore the maximum rates which the ordinances fix were susceptible of continued enforcement against the plaintiff, although their operation would be confiscatory, and therefore further contends that the defendant city has a right to enforce the ordinance rates in consequence of the contracts, without reference to whether such rates were in and of themselves confiscatory. The defendant contends that under the provisions of law, hereinafter quoted, with no statutory or constitutional prohibition, the defendant had the power to enter into the contracts with the plaintiff, fixing the rates for a definite time, named in the ordinances, governing both the plaintiff and the defendant during the time therein named, and that the enforcement of such rights is controlled by the obligation resulting from the contracts, and therefore the question of whether such rates are confiscatory becomes immaterial. The motion of the defendant to dismiss admits all of the material allegations of the bill of complaint which are well pleaded, and there is no technical objection as to the sufficiency of the pleadings to raise the issue. It follows that the rates herein involved are conceded to be confiscatory, for the purpose of these motions.

The rates, then, cannot be enforced, unless they are the result of and secured by a contract obligation. The existence of a binding contract as to the rates named in the ordinances set forth in the bill of

complaint, therefore, is the single issue upon which the determination of defendant's motions must depend. The determination of this issue depends, first, upon the question of the power of the parties plaintiff and defendant to contract on the subject; and, second, if they had such power, whether they exercised it. There has been no contention made that the plaintiff had no contractual power. This reduces the issue to the question: Had the defendant, under the laws and provisions of the Constitution of South Dakota, such power?

Consideration of what the various states have held, under circumstances similar to those set forth in the bill of complaint, but adds to one's confusion. The real question to be determined here is: What were the rights of these parties under the statutes and Constitution of this state? Incidentally, it may be mentioned here that, upon the showing of the defendant upon its motion to dissolve and discharge the injunction, it was shown that in addition to the allegations set forth in the bill, that the plaintiff or its predecessors in interest, at the time of the passage of the ordinances in question, filed their acceptances in writing, and this, it was conceded by all parties, should be taken into consideration by the court in determining this issue. No formal stipulation was entered into to that effect, but I deem it of sufficient importance, if this decision be reviewed, that counsel should stipulate that fact, or amend the bill of complaint to show it, so it may be considered by the appellate court from the same viewpoint. This latter element should be added to the statement heretofore made.

Defendant's contention is that the enactment of these ordinances, granting the franchises and naming the rates to be charged, and the actual acceptances in writing of the same by the utility corporation, constitute contracts, binding as such upon both the defendant and the utility corporation, the predecessor of the plaintiff. The plaintiff resists this contention, and denies there is any power conferred by statute upon the city council to enter into contracts upon the subject of rates.

The plaintiff, in support of its position, presents a long list of authorities holding that, although the governmental agencies have authority to deal with the subject-matter, fix and enforce reasonable rates to be paid public service corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporation. The defendant, in support of its motion, presents just as many authorities holding that, where the public utility corporations and the governmental agencies deal, they have the power to contract as to rates, and to exert that power by fixing by contract the rates to govern during a particular time; that the enforcement of such rates is through the obligation resulting from the contract, and, therefore, the question of whether such rates are confiscatory becomes immaterial. Both are right in their contentions. The real question here is: Under which of the two well-defined classes of cases do the facts in this case place the plaintiff and defendant herein?

The first thought, when this question is presented for determination, is: What has the Supreme Court of South Dakota determined with reference to the power and rights of municipal corporations under the circumstances presented here? The defendant contends that the Supreme Court of South Dakota, in City of Watertown v. Watertown Light & Power Co., 42 S. D. 220, 173 N. W. 739, has determined the question at issue here in favor of the defendant.

This was an action brought by the plaintiff city to restrain the defendant from putting into effect a new schedule of rates for electrical current furnished by the defendant company. The franchise contained a maximum rate, and it was also provided that the company should furnish such services (under reasonable regulations, to be approved by the city council of such city), and that the utility company might make rules and regulations not in conflict with the provisions of the franchise or the laws of the state, subject to the consent of the city council of said city. Prices were regularly fixed, and thereafter the company sought to increase such prices. The court held that the provisions of the special charter, under which the city of Watertown was operating, "gave it implied authority to contract for the furnishing of electrical current to its people." This being the determination of the Supreme Court of South Dakota, it becomes important to know just what the provisions of this Watertown special charter were, and what, if any, differences there are between the provisions of such charter and the general laws governing the plaintiff and the defendant at the time they entered into this relation in 1913.

The provision contained in the Watertown charter, construed by the Supreme Court of the state, as above stated, is as follows:

"To provide for the lighting of streets and public grounds, the laying down of gas pipes, and erecting of lamp posts for conveying electric lights. telegraph and telephone lines, and to regulate the distribution, sale and use of gas or other illuminative fluids."

The powers of municipal corporations, under the laws in effect in 1913, are as follows:

(1) "To provide for the lighting of the same"—i. e., streets and public grounds. Rev. Pol. Code 1903, § 1229, subd. 11.

This provision, it will be observed, corresponds with the first clause in the special charter:

(2) "To regulate the openings therein for the laying of gas and water mains and pipes." Rev. Pol. Code 1903, § 1229, subd. 13.

This provision corresponds to the second clause of the Watertown charter, "the laying down of gas pipes."

(3) "To regulate * * * erecting gas or electric lights." Supra, subd. 13.

This corresponds to the third clause of the Watertown charter, "and erecting of lamp posts for conveying electric lights, telegraph and telephone lines."

(4) That any company organized for the purpose of manufacturing gas or electricity has "the right by consent of the city council * * * to lay down

pipes, or string wires on poles, in the streets or alleys of any city in this state, subject to such regulations as such city may by ordinance impose." Supra, subd. 13.

The last clause of the provision in the Watertown special charter is as follows:

"And to regulate the distribution sale and use of gas or other illuminative fluids."

Those of us who are familiar with the securing of the special charters by act of the Legislature for the cities of the state in the early days know by experience that these powers in the special charters were almost universally taken by the persons drawing the bill from the recitals of powers in the general statutes of the state.

There is no substantial difference in the provisions of this Watertown charter and the general provisions above quoted, and with which they have been compared. The final clause of the general statute differs in form from the Watertown charter, as above stated. In substance, however, there is a grant of the same authority as was given in the charter, to wit:

"To regulate the distribution, sale and use of gas or other illuminative fluids."

This provision of the statute is general in character, and clearly includes the particulars enumerated in the Watertown charter. The word "regulation," as used in the statute, certainly includes something more than the manner of laying of pipes, or erecting gas or electric lights, or of stringing wires on poles, since the power to regulate this had already been expressly provided for. What other regulations could a city adopt than those enumerated in the Watertown charter concerning the "distribution, sale and use of gas or" electricity? So much for the similarity of the statute of the state and the provisions of the Watertown charter.

In the determination of this issue, however, one must not only construe the language of the statute itself in determining the powers, but must go farther and determine from an examination of the statute the absence of power. There is an entire absence from the Watertown charter, and the statutes of the state in force in 1913, of any power to regulate or change rates. No such power existed in the Watertown charter, nor can it reasonably be construed to be within the provisions of the statutes above quoted. It was this lack of power in the Watertown charter which was decisive of the issue in the Supreme Court of the state. It is this lack of power in the provisions of the state statute of South Dakota that must be decisive of the issue presented here.

The Supreme Court of South Dakota in City of Watertown v. Watertown Light & Power Co., supra, recognized the two classes of power residing in a municipality—one, purely governmental in its nature; the other, partaking of administrative or business nature. This same distinction is drawn by Judge Sanborn in Re Omaha Water Co. v. City of Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614. The Supreme Court of the state determined, in the Watertown Case, that—

"To the first of those belongs the police power, and in the exercise of such police power a city council can in no manner bind its successors; but a city has full power, when authorized either by the Constitution of the state or by legislative enactment, to contract for the rendering of public service by individuals or private corporations, and in such contract fix the rates to be charged for such service. The granting of a franchise fixing a maximum rate is a contract, and, when the franchise itself does not reserve to the city future control of the rates to be charged for service, or the Constitution or statute under which the city acted in granting the franchise does not reserve to such city future control over such rates, including the power to change same, such franchise becomes a binding contract, no more subject to impairment than would be the contract of individuals."

In the case at bar these franchises do fix a maximum rate, and are contracts, because the franchises themselves do not reserve to the city future control of rates to be charged for service, nor do the statutes or Constitution of the state of South Dakota, under which the defendant acted in granting the franchises, reserve to the city future control over such rates, nor is there any power in the statutes, as they then existed, given to the city to change these rates. The relation between the plaintiff and defendant was and is, therefore, contractual, and such a contract cannot be impaired by an amendment of the laws or of the Constitution. We are not, therefore, concerned with the powers of municipalities as they have been developed since that time in this state.

In construing this provision of the Watertown charter, the Supreme Court of the state said:

"It follows that, in a case such as this, the public service corporation has the absolute contractual right to charge such rates as to it may seem best, so long as it keeps within its contract by not charging in excess of the price fixed thereby. * * *"

It may be noted that the opinion in the Omaha Case, supra, was made the basis of this decision of the Supreme Court of this state, and special reference was made thereto. I am therefore of the opinion that the Supreme Court of this state has determined the issue presented here in favor of the defendant.

There is no statute of this state in positive terms prohibiting any abridgment of the right to regulate and fix charges of public service corporations, either by ordinances, resolution, or contract. Such a statute existed in the state of Iowa, controlling the decision in Re Southern Iowa Electric Co. v. Chariton, 255 U. S. ——, 41 Sup. Ct. 400, 65 L. Ed. ——. In section 725 of the Iowa Code of 1897, quoted in the opinion, the powers of the municipality are enumerated as follows:

"Sec. 725. *Regulation of Rates and Service.*—They shall have power * * * to regulate and fix the rent or rates for water, gas, heat and electric light or power, * * * and these powers shall not be abridged by ordinance, resolution or contract."

Thus, in Iowa, the legislative power to fix rates was conferred by this section upon the city council, was a continuing one, and could not be abridged or bartered away by contract or otherwise. It is said by the Supreme Court of Iowa in Woodward v. Iowa R. & Light Co., 178 N. W. 549, that—

274 F.—53

"There was a time in the history of our legislation when the right of contract as to rates was conferred by statute upon the city council. * * * By the revision and codification of 1897, the right of contract as to rates for utilities of this character was entirely eliminated, and the legislative power to regulate rates was conferred upon the city council in all cases."

The court then proceeds to give the reasons for this change. That is the situation in this state. It cannot be contended there is anything in our statutes or Constitution which abridges or denies the council of the defendant the right to make ·the contract in question here. Of course, under the statute of Iowa, as it has been construed by the Supreme Court of that state (and must necessarily be construed), the opinion of the Supreme Court of the United States denied the city council the power to make the contract. However, that can have no application to the situation that obtains here, considering the legislation of the state and the lack of legislation.

In San Antonio v. San Antonio Public Service Co., 255 U. S. —, 41 Sup. Ct. 428, 65 L. Ed. —, the city moved to dismiss the bill for want of jurisdiction, because it presented no substantial federal question, as it showed on its face that the parties were bound by the five-cent fare provision of the franchise ordinance as a contract subject to be enforced, even though the rate was confiscatory, and moreover because the bill otherwise stated no ground for equitable relief. The court overruled the motion. It reviewed the history of the case, and decided that:

"In view of the controversy as to the contract growing out of the enforcement of the half-fare law, terminated by the ruling of this court in the Altgelt Case, as well as of all the subsequent dealings between the parties, the existence of a contract as to the five-cent fare was not established, and hence the attempt to enforce it, because of the confiscation to result, gave a cause of action under the Constitution of the United States"—citing San Antonio Pub. Service Co. v. San Antonio (D. C.) 257 Fed. 467.

The Supreme Court of the United States in that case said:

" * * * It follows that the solitary question to be considered is whether a contract existed empowering the city to enforce the confiscatory rate. Primarily the answer to that question must depend upon whether the ordinance of 1899, fixing the five-cent rate, was a contract. That it was not, and could not be, we are of opinion is the necessary result of the provision of section 17, art. 1, of the state Constitution, existing in 1899, prohibiting 'any irrevocable or uncontrollable grant of special privileges,' etc., when considered in the light of the irrevocable and uncontrollable elements which must necessarily inhere in the ordinance of 1899 to give it the contract consequence relied upon."

I quote the foregoing to show that the Supreme Court relied entirely upon the prohibition above set forth, which does not obtain in the statutes of the state of South Dakota. In this opinion, however, the Supreme Court of the United .States still recognizes the right of contract, as follows:

"Where, however, the right to contract exists, and the parties, the public on the one hand, and the private [owner] on the other, do so contract, the law of the contract governs both the duty of the private owner and the governmental power to regulate." San Antonio v. San Antonio Public Service Co., supra, 255 U. S. —, 41 Sup. Ct. 431, 65 L. Ed. —.

In this case the Supreme Court recognized the attitude of the parties themselves, and their evident interpretation of their relation, the city council assuming the right to control, and contrasted the ordinances of the city enacted subsequent to the date of the franchise with the position the city attempted to maintain in the record in the case then being considered.

I submit that in my judgment there is an entire absence from the franchises, or the laws and Constitution of the state of South Dakota, of any power in the defendant city to change or control the rates in question, construing such laws and the Constitution as they existed in August, 1913, when this relation was entered into. If the facts disclosed that either the ordinances in question or the statutes or a provision of the Constitution reserved to the city the power to change or control such rates, that power would be inconsistent with the idea that the city could not change or control them so that they might always be just.

[2] My attention has been called to the fact that our South Dakota Constitution provides:

"No * * * law * * * making any irrevocable grant of privilege, franchise or immunity shall be passed." Const. S. D. art. 6, § 12.

It has been held, however, that a contract for gas or water creates no special privilege or immunity contravening such constitutional provision, and this was held in Omaha Water Co. v. City of Omaha, supra, upon which the Supreme Court of this state relied, and to which special reference was made in City of Watertown v. Watertown Light & Power Co., supra.

In Columbus R., L. & P. Co. v. Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1649, the Supreme Court says:

"Whether these ordinances constituted such contract depends upon the proper construction of the statutes of Ohio in force at the time and the terms of the ordinances in question."

This, I think, is precisely the situation here. These two elements were considered in the Watertown Case, and determined in favor of the defendant in this action. The federal Supreme Court, in Columbus R. L. & P. Co. v. Columbus, supra, then quoted from the opinion of that court in Cleveland v. Cleveland City Ry. Co., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102, the following:

"No reservation was made of a right to alter, that by those ordinances existing rights of the corporations were surrendered, benefits were conferred upon the public, and obligations were imposed upon the corporations to continue those benefits during the stipulated time. When, in addition, we consider the specific reference to limitations of time which the ordinances contained, and the fact that a written acceptance by the corporations of the ordinances was required, we can see no escape from the conclusion, that the ordinances were intended to be agreements binding upon both parties, definitely fixing the rates of fare which might be thereafter charged."

In the Home Telephone Co. Case, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176, the general statute reserved to the city power "to regulate the sale and use of gas and electric light, and to fix and determine the

price of gas and electric light." No such power was reserved to the city defendant in the case at bar, when the Water, Power & Light Company obtained its franchises. I may add here, however, that it is reserved to cities under the Revised Code of 1919, in section 6169, subd. 18; but even in that reservation there is this addition:

"And to grant franchises and rights to persons, associations or corporations for such purposes, and to regulate the same."

This statute, of course, is not germane to the issue presented here.

I am therefore of the opinion that the city was authorized to enter into the relation with the plaintiff and its predecessors set forth in the bill of complaint, and that that relation is contractual, and that there is an entire absence of abrogation of power by the Legislature to the municipality to regulate rates, and therefore that the motions of the defendant to dismiss plaintiff's complaint, and to dissolve and discharge the temporary injunction, should be and are sustained, with exceptions to the plaintiff.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes